IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

THOMAS P. TAYLOR                                                                PLAINTIFF

V.                                            NO. 10-3039

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                              DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Thomas P. Taylor, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on May 8, 2007, alleging an inability to work since March 15, 2007, due to major depressive disorder, panic attacks, agoraphobia, and anxiety. (Tr. 175, 180). For DIB purposes, Plaintiff maintained insured status through September 30, 2011.[1] (Tr. 35). An administrative hearing was held on

---

[1] The Court notes that the May 24, 2007 Disability Report-Field Office, indicates the date last insured as December 31, 2010.

March 5, 2009, at which Plaintiff appeared with counsel, and Plaintiff, his wife, a friend, and former employer testified. (Tr. 52-106).

By written decision dated July 31, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe: chronic pain disorder; seizure disorder; mood disorder; and anxiety disorder. (Tr. 37). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 37). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant must avoid concentrated exposure to hazards, such as unprotected heights and heavy machinery. The person can perform low stress work (defined as occasional decision making and occasional changes in work place setting). The claimant can perform unskilled work where interpersonal contact is incidental to the work performed, but can have no contact with the general public.

(Tr. 39). With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform his past relevant work as a prep cook, which is of medium exertional level, unskilled, since that work did not require the performance of work-related activities precluded by the Plaintiff's RFC. (Tr. 42).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on March 17, 2010. (Tr. 3-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs,[2] and the case is now ready for decision. (Docs. 14, 15).

---

[2] As will be more fully discussed later in the opinion, the Court is striking Plaintiff's thirty-four page brief.

**II.     Evidence Presented:**

Plaintiff was born in 1973 and received his GED. (Tr. 65, 175). In 1992, Plaintiff was involved in a motor vehicle accident, and sustained a fracture of his left femur. (Tr. 439). On June 12, 2006, Plaintiff was again involved in a motor vehicle accident, and sustained a closed fracture of the right acetabulum.[3] (Tr. 243). An "open reduction and internal fixation right posterior wall acetabular fracture with cancellous allograft grafting" was performed. (Tr. 198). Plaintiff had also previously suffered from depression, and had taken Prozac and Zoloft in the past. (Tr. 345). The admission diagnoses on June 12, 2006, at St. John's Regional Health Center, was:

1. Comminuted right posterior wall acetabular fracture
2. Small scalp laceration
3. Knee laceration
4. History of tobacco use
5. History of hypertension
6. History of depression

(Tr. 198).

On July 27, 2006, Plaintiff presented himself to Dr. Stephen Austin at Ozark Counseling Services. (Tr. 299-302). Dr. Austin diagnosed Plaintiff with:

| | |
|---|---|
| Axis I: | Panic d/o with agoraphobia |
| | Alcohol dependence - full remission |
| | Cyclothymia[4] d/o r/o ADD |
| Axis:II: | Deferred |
| Axis III: | Car wreck 6/03 - right hip rebuilt - r/o fetal alcohol syndrome - high bp |

---

[3]Acetabulum - The large cup-shaped cavity on the lateral surface of the os coxae in which the head of the femur articulates; called also acetabular bone, cotyloid cavity, and os acetabuli. Dorland's Illustrated Medical Dictionary 12 (31st ed. 2007).

[4]Cyclothymia disorder - A mood disorder characterized by numerous alternating short cycles of hypomanic and depressive periods with symptoms like those of manic and major depressive episodes but of lesser severity. Called also cyclothymia. Id. at 556.

-3-

|   |   |
|---|---|
| Axis IV: | Problems with primary support |
|   | Problems related to social environment |
|   | Occupational problems |
|   | Other psychosocial/environmental problems |
| Axis V: | Current GAF - 40 |

(Tr. 302).

Follow-ups relating to Plaintiff's 2006 hip surgery revealed that he was doing well and was healing nicely. (Tr. 213, 215, 217).

On September 12, 2006, Plaintiff presented to Northwest Arkansas Regional Medical Center, complaining of having a seizure. (Tr. 233). It was noted that Plaintiff usually took Xanax and Cymbalta, but had taken neither in a couple of days. (Tr. 233). This was the first seizure Plaintiff had experienced. A CT of the brain without contrast indicated a normal study. (Tr. 239). Plaintiff's primary diagnosis was: 1. Grand mal seizure; and 2. Possibly withdrawal seizure - benzodiazepine. (Tr. 235).

On October 2, 2006, Plaintiff saw Dr. Austin again, and reported having trouble sleeping. (Tr. 306). Dr. Austin diagnosed Plaintiff at that time with:

|   |   |
|---|---|
| Axis I. | Cyclothymic disorder |
|   | Panic d/o with agoraphobia |
|   | Alcohol dependence in full remission |
| Axis II: | r/o Personality disorder, NOS |
| Axis III: | HTN |
| Axis IV: | Economic problems and other psychosocial/environmental problems |
| Axis V: | Current GAF - 50 |

(Tr. 309).

On November 16, 2006, Plaintiff presented himself to Northwest Arkansas Regional Medical Center, complaining of migraine headaches. (Tr. 228).

On January 24, 2007, Plaintiff's treating physician, Dr. Kevin Jackson, of Crossroads

-4-

Medical Clinic, indicated in a letter that Plaintiff was involved in a serious motor vehicle accident, and was unable to work from June 12, 2006 through October 8, 2006. (Tr. 363).

On February 22, 2007, Dr. Austin noted that Plaintiff stated he was doing well on his medication. (Tr. 311). Plaintiff asked if he could have an increase in his Xanax in order to help him sleep, to which Dr. Austin agreed. Dr. Austin diagnosed Plaintiff with:

|  |  |
|---|---|
| Axis I: | Cyclothymic Disorder |
|  | Panic Disorder with agoraphobia |
|  | Alcohol Dependence, in full remission |
| Axis II: | Continue to rule out personality disorder NOS |
| Axis III: | History of hypertension |
| Axis IV: | Financial/other psychosocial and environmental problems |
| Axis V: | GAF - 50 |

(Tr. 311).

On May 24, 2007 and August 23, 2007, Dr. Austin noted that Plaintiff was doing well on his medications, with no side effects. (Tr. 312). On July 23, 2007, Dr. Jackson noted that Plaintiff was still complaining of unrelenting pain in his lower extremity. (Tr. 364).

On September 10, 2007, a Mental Diagnostic Evaluation was performed by W. Charles Nichols, Psy.D. - Clinical Psychologist. (Tr. 270-275). Dr. Nichols reported that Plaintiff continued to enjoy watching television and walking and going on trips, and reported chronic insomnia as well as a lack of energy and motivation to do things. (Tr. 270). Plaintiff also reported to Dr. Nichols that he suffered from agoraphobia during the previous nine years, and that he believed his symptoms were progressively more incapacitating. (Tr. 270). Plaintiff reported to Dr. Nichols that he was taking Cymbalta and Alprazolam, and believed the Cymbalta had been helpful. "My clarity is better. My focus is better on tasks. It seems to help with that. It seems to lessen my panic attacks somewhat and helps with my pain." (Tr. 271). Plaintiff also

reported that he worried constantly before he began taking Cymbalta, but that had diminished. (Tr. 271). Dr. Nichols reported that Plaintiff bathed daily and needed no assistance with bathing or dressing/undressing. (Tr. 271). Plaintiff told Dr. Nichols he believed he was a good driver, and that he mowed the lawn on a riding mower, occasionally washed dishes, and took out the trash. (Tr. 271). Plaintiff indicated that he tended to forget to take his medications and therefore had frequent reminders from his wife to take them. (Tr. 271).

Plaintiff also reported to Dr. Nichols that he had a history of alcohol abuse patterns, but had been abstinent for over two years. (Tr. 272). Dr. Nichols noted that Plaintiff was very anxious at first, but became significantly more relaxed and interactive as the session progressed. (Tr. 272). Plaintiff also told Dr. Nichols that he believed his depression had lifted considerably due to Cymbalta, and that his anxiety was his predominant mood. (Tr. 272). Dr. Nichols diagnosed Plaintiff with:

| | |
|---|---|
| Axis I: | Social Phobia, Generalized Type with Panic Attacks |
| | Major Depressive Disorder, Recurrent, Mild |
| | Alcohol Dependence, Sustained Full Remission (per claimant) |
| Axis II: | Diagnosis Deferred |
| Axis V: | GAF - 60 (Current) |

(Tr. 274). Dr. Nichols found that based on Plaintiff's alleged mental symptoms, mild to moderate impairment of activities of daily living functioning was expected, and that with medication, Plaintiff was able to go out, but with accompanying anxiety. (Tr. 274). He further found that Plaintiff appeared to be capable of performing simple mental tasks, as long a distractors were not overly intense in his environment. (Tr. 274).

On September 26, 2007, a Mental RFC Assessment was completed by non-examining consultant, Dan Donahue. (Tr. 280-283). Dr. Donahue found Plaintiff was not significantly

-6-

limited in eleven out of twenty categories, and was moderately limited in nine out of twenty categories. (Tr. 282). In a Psychiatric Review Technique form completed by Dr. Donahue on the same date, he found Plaintiff suffered from affective disorders, anxiety-related disorders, and substance addiction disorders. (Tr. 284-209). Dr. Donohue found that Plaintiff had a moderate degree of limitation in: restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence or pace, and had one or two episodes of decompensation, each of extended duration. (Tr. 294). Dr. Donahue concluded that Plaintiff had symptoms of a significant mental disorder that regularly interfered with adaptive functioning. However, while serious, he found the symptoms did not meet or equal a mental listing. At that time, Dr. Donahue felt Plaintiff retained the ability to perform substantial gainful activity, and could perform semi-skilled work. (Tr. 296).

On October 4, 2007, Dr. Austin noted that Plaintiff was doing well on his medication. (Tr. 314). On December 17, 2007, Dr. Jackson noted that Plaintiff needed his medications refilled, but had no new complaints. He continued to have pain in his "limb" and "chronic pain due to trauma." (Tr. 367).

On January 5, 2008, Plaintiff presented to Ozark Health Medical Center emergency room, having had a seizure. His wife said he "locked up," fell over, striking the left side of his neck on a table as he hit the floor, was shaking violently, and turned blue. A CT of his head without contrast proved to be negative, and a CT of his cervical spine without contrast revealed no fracture or malalignment. (Tr. 380, 388).

On March 13, 2008, a Neuropsychological Evaluation was conducted by Vann Smith. (Tr. 354-357). Dr. Smith found that Plaintiff's clinical history, mental status examination and

neuropsychodiagnostic screening test profile data revealed a pattern of abnormal findings consistent with the diagnosis of:

> 1. Cognitive Dysfunction, non-psychotic, secondary to general medical conditions (294.10)
> 2. Mood disorder, secondary to general medical conditions (293.83)
> *TBI, multiple, with Grade III Concussion
> *Seizure D/O, per patient history
> *HTN, per patient history
> *Chronic, non-psychogenic, pain disorder

(Tr. 357).

On March 28, 2008, Dr. Smith completed a Mental RFC Questionnaire. (Tr. 358-362). He found Plaintiff's current GAF score to be 45 and his prognosis to be fair. (Tr. 358). He found Plaintiff was limited, but satisfactory, in six out of twenty categories; seriously limited, but not precluded, in four of twenty categories; and unable to meet competitive standards in ten of twenty categories. (Tr. 360). He found that pain was a significant contributing factor. (Tr. 361).

On April 19, 2008, a Mental RFC Questionnaire was completed by Dianne C. Martan, LCSW, a social worker with Ozark Counseling Services. (Tr. 401-405). Ms. Martan reported that Plaintiff had been seen at their facility two times a month from July 27, 2006, to the present date, and reported that the medication and therapy had been helping Plaintiff function, but that anxiety still interfered with daily living and therefore, the prognosis was poor, due to poor insight and judgment. (Tr. 401). Ms. Martan found Plaintiff was seriously limited, but not precluded, in one of twenty categories; unable to meet competitive standards in eleven of twenty categories; and had no useful ability to function in six of twenty categories. (Tr. 403). She reported that Plaintiff often lost track of the original question and that he answered questions but got

tangential, requiring him to be brought back to the subject. (Tr. 403). She also found that he pushed for praise and acceptance frequently, and felt judged and criticized by people. (Tr. 403). She believed he was seriously limited, but not precluded, in interacting appropriately with the general public, unable to meet competitive standards in maintaining socially appropriate behavior, and traveling in unfamiliar places. (Tr. 404).

On January 21, 2009, Plaintiff saw Dr. Jackson for refills of his medications. He stated that Hydrocodone was not helping after 2.5 years. (Tr. 374). Dr. Jackson assessed Plaintiff with pain in a "limb" and chronic pain due to trauma. He noted that Plaintiff's extremities showed no cyanosis, clubbing, or edema, his reflexes were normal and "2+ symmetrically of knees and achilles." (Tr. 374).

On September 22, 2009, a Patient Care Report indicated that a call was received by EMS to respond to Plaintiff, who was having a seizure. (Tr. 15). Upon EMS arrival, Plaintiff was found lying supine on the floor. Plaintiff was alert to verbal sounds, but was confused and unable to answer questions. He seemed very agitated, and Plaintiff's wife stated that Plaintiff had a history of seizures, which started approximately three years prior, after a car accident. Plaintiff's wife also stated that the previous day Plaintiff was out of Depakote medication and had taken one of hers. It was unknown whether there was a manufacturing difference in the two drugs. Plaintiff became more oriented upon arrival at the emergency room. (Tr. 15). A MRI of the brain without contrast was performed on September 24, 2009, and the result was a normal brain and ventricles and bilateral maxillary mucosal thickening. (Tr. 9). It was noted in the emergency record that Plaintiff had missed a few doses of Depakote, due to a change in the supplier, and Plaintiff was taking his "significant other's" dose, but only took it once a day, when

he was supposed to be taking it two times a day. (Tr. 10).

In an undated "Treating Physician's Report for Seizure Disorder," it was noted that Plaintiff's most recent seizure was in September of 2009, that the date of his last adjustment of medications was in September of 2009, "after his last seizure," and that Plaintiff had no seizures since his medication was adjusted. (Tr. 7).

In an undated Disability Report - Adult, Plaintiff reported that the conditions that limited his ability to work were major depressive disorder, panic, agoraphobia, and anxiety. (Tr. 180). He indicated that it was hard to be around people, that he had trouble focusing, and that his medication made him sleepy. (Tr. 180). He reported that he stopped working on March 15, 2007, because it "was too much for me, anxiety too much." (Tr. 180).

At the March 5, 2009 hearing, Plaintiff testified that he had a least one petit mal seizure a week and a grand mal seizure at least once a month. (Tr. 57). He said that since his first grand mal seizure in September of 2006, he has had about 13 or more grand mal seizures, but went to the doctor after they occurred only maybe two times. (Tr. 64). He reported that he had anxiety to the point that it was difficult for him to work around other people and to focus on a particular task. He also said he had problems with his hip hurting him. (Tr. 66). He stated that his right hip pain was continual, even with medication, and that he had neck pain and his hands went numb once a week. (Tr. 70). He also stated that he had severe problems with short-term memory and concentration or focus. (Tr. 72-73). On a typical day, Plaintiff stated that he watched television, walked around the house or went outside for a brief walk, mowed his lawn on a riding lawnmower in short intervals, carried laundry, drove, and was able to dress, bathe and groom himself. (Tr. 78-84).

-10-

Plaintiff testified that Ozark Counseling Center was treating him with Depakote for the seizures, and that it had been very effective. (Tr. 98). He stated that he had not had the violent seizures or anything since he began taking the Depakote. (Tr. 98). A former employer, Stacey Watkins, a friend, Jason Gonzalex, and Rebecca Taylor, Plaintiff's wife, all testified regarding Plaintiff's limitations. (Tr. 86-99) .

**III.    Applicable Law:**

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massananari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantially gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(3), 1382(3)(D).

A Plaintiff must show that his disability, not simply his impairment, has lasted for longer than at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listing; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.3d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### IV.   Discussion:

The Court first notes that on December 20, 2010, Plaintiff's attorney filed the Appeal Brief, which consisted of 34 pages, plus 24 pages of attachments. (Doc. 14). In the Court's Scheduling Order, the undersigned specifically stated that "The brief should be no longer than twenty (20) pages in length. Any brief exceeding the page limitation imposed herein may be stricken from the record." No request to file a brief exceeding twenty pages was filed by Plaintiff's attorney. **Accordingly, pursuant to the Court's directive and the failure of Plaintiff's attorney to comply with the Scheduling Order, Plaintiff's Appeal Brief is hereby deemed stricken. In the event Plaintiff's attorney continues to file Appeal briefs without complying with the Scheduling Order, the Court will consider imposing more severe**

**sanctions.**

**A.     Impairments**

"The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." Id., citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

In the present case, the ALJ found that Plaintiff's chronic pain syndrome and broken acetabulum did not meet Listing 1.06, in that the medical records do not demonstrate an inability to ambulate effectively, as described in Listing 1.00B2b, and Plaintiff returned to effective ambulation within 12 months of onset. The records indicate that after Plaintiff's surgery in 2006, he healed nicely, and there was no indication of any limp.

With respect to Plaintiff's chronic pain syndrome and seizure disorder, Listings 11.02 and 11.03 provide:

> 11.02 - *Epilepsy-convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.* With:
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.
>
> 11.03 - *Epilepsy - nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R., Pt. 404, Subpt. P, App. 1. The record indicates that Plaintiff's seizures were controlled by the Depakote - Plaintiff did not have any seizures after he began taking the Depakote, and the seizure he had in September of 2009 occurred because he had run out of Depakote, and had taken only one of his wife's Depakote, rather than the two he was supposed to take. Accordingly, Plaintiff's seizure condition did not meet the criteria of the listings. As to Plaintiff's chronic pain syndrome, an August 4, 2008 record of Dr. Jackson's indicates that Plaintiff's pain was adequately controlled. (Tr. 370).

With respect to Plaintiff's mental impairments, the ALJ considered them singly and in combination, and found they did not meet or medically equal the criteria of listings 12.04 and 12.06, concluding that the "paragraph B" criteria and "paragraph C" criteria were not satisfied. The Court agrees. The ALJ properly analyzed Plaintiff's impairments, noting that Plaintiff had moderate restriction in his activities of daily living, social functioning, and concentration, persistence or pace, and that Plaintiff experienced one or two episodes of decompensation, but still retained the ability to perform substantial gainful activity. (Tr. 38). There is substantial evidence to support the ALJ's finding that Plaintiff's impairments do not meet or medically equal the listed impairments.

**B.     Subjective Complaints and Credibility Analysis:**

When assessing Plaintiff's subjective complaints, the ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:   (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects

of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. The ALJ noted that subsequent to Plaintiff's surgery from the motor vehicle accident on June 12, 2006, the medical records indicate that Plaintiff was healing nicely, and was released to return to work on regular duty on October 10, 2006. In August of 2008, Dr. Jackson reported that Plaintiff's pain was adequately controlled. (Tr. 370).

Plaintiff's daily activities also indicate that his pain is not as disabling as alleged. In September of 2007, Plaintiff reported that he enjoyed watching television, walking and going on trips. He needed no assistance with personal care, and made meals about three times per week. He has a driver's license, mows the lawn on a riding mower, occasionally washes dishes, and takes out the trash. At the hearing, he testified that he went to Wal-Mart to get groceries with his wife and mother, picked up his mother's medicine, left the house three to four times a week, carried some laundry, and washed some dishes.

With respect to Plaintiff's seizure activity, Plaintiff testified that the Depakote was very effective in controlling his seizures, and that he had not had any seizures since he began taking the Depakote. Plaintiff also reported that the Cymbalta diminished his depression, and Dr. Nichols reported that with medication, Plaintiff was able to go out, but with accompanying anxiety. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009), quoting Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004).

The ALJ also considered the testimony of Plaintiff's former employer, friend and wife. He stated that their testimony did not support Plaintiff's allegation of disability:

> Stacy Watkins testified that the claimant had good follow though[through]. Jason Gonzales observed the claimant have one grand mal seizure, but he had not seen the claimant have any petit mal seizures, and he sees the claimant three times a week. The claimant's wife testified that if the claimant is not crowded, he is usually fine.

The ALJ concluded, and the Court agrees, that the RFC takes into account the limitations described by the Plaintiff's witnesses, and the Court finds there is substantial evidence to support the ALJ's credibility findings.

**C.    RFC Assessment:**

The ALJ found that Plaintiff had the RFC to perform medium work with certain limitations. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005);

Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ noted that due to Plaintiff's seizure disorder, work near unprotected heights and heavy machinery was excluded by the RFC. He further found that none of the records indicated that Plaintiff was incapable of performing work at the medium exertional level. The ALJ considered the opinions of Dr. Stephen Austin, Dr. W. Charles Nichols, Dr. Vann Smith, and Dianne C. Martan. He gave greater weight to the opinions of Dr. Austin and Dr. Nichols, as he believed they were consistent with diagnosing Plaintiff with a mood disorder and anxiety disorder. The ALJ gave little weight to Dr. Smith, stating that his neuropsychological evaluation was based on a discounted diagnosis and was inconsistent with the report from the social worker.

The ALJ also gave little weight to the social worker's opinion, finding that it was not consistent with the records from Plaintiff's treating psychiatrist at the time. The ALJ noted that Dr. Austin reported that Plaintiff had not experienced suicidal ideation, was doing well on his medications, and that his affect and mood were euthymic. The RFC limits the Plaintiff to low stress, unskilled work where interpersonal contact is incidental to the work performed and where

he will have no contact with the general public. The ALJ concluded that Dr. Nichols' opinions regarding Plaintiff's limitations was consistent with that of Dr. Austin, and that their opinions were given greater weight than those of Dr. Smith and the social worker. The Court believes this was appropriate in this case.

As noted by Defendant, courts have affirmed decisions in which one-time examination reports from Dr. Vann Smith were accorded little weight. See Hudson v. Barnhart, 2005 WL 1560249, *1 (8th Cir. Jul. 6, 2005)("The ALJ gave good reasons for his resolution of the conflict between the mental RFC opinion of Dr. Smith versus those of consulting psychologist Paul Iles and the agency reviewing psychologists"). In Clement v. Barnhart, 2006 WL 1736629 (8th Cir. June 26, 2006), the Eighth Circuit concluded that the ALJ properly discounted the RFC assessment in Dr. Smith's report "after finding it was not supported by his own testing and evaluation, or by other medical evidence in the record, and was inconsistent with Clement's reported daily activities." Id. at *1. District Courts in the Western District of Arkansas have affirmed the ALJ decisions which accorded little weight to Dr. Vann Smith's opinions. See Cole v. Astrue, 2009 WL 3158209, *8 (W.D.Ark. Sept. 29, 2009)(held that Dr. Smith's opinion was inconsistent with the remaining medical evidence of record); Partee v. Astrue, 2009 WL 2987398, *1 (W.D. Ark. Sept. 14, 2009)(held that the ALJ clearly recited the evidence of record and why he gave more weight to the findings of Dr. Bunting over that of Dr. Smith); Haarstad v. Astrue, 2009 WL 2324711, *5 (W.D. Ark. July 27, 2009). The court in Cole also found that the ALJ was not biased against Dr. Smith, but merely pointed out the "inconsistencies within Dr. Smith's assessment and the inconsistencies between Dr. Smith's assessment and the other medical evidence of record." 2009 WL 3158209 at *8, n.1. The undersigned is of the opinion

that this is exactly what the ALJ did in the present case. The Court believes that the ALJ properly found Dr. Smith's findings and examination inconsistent with other evidence

With respect to the opinion of Diane Martan, a social worker is not an acceptable medical source. Tindell v. Barnhart, 444 F. 3d 1002, 1004-1005 (8th Cir. 2006); see 20 C.F.R. § § 404.1513(d) and 416.913(d). A record that is not from an acceptable medical source is not entitled to any particular or special weight.

Based upon the entire evidence of record, the Court finds substantial evidence supports the ALJ's RFC findings.

**D.     Hypothetical Proposed to Vocational Expert:**

In the hypotheticals proposed to the VE, the ALJ asked the VE to consider an individual with no exertional limitations, but who should avoid concentrated exposure to hazards, such as unprotected heights and heavy machinery, and who could perform unskilled work where interpersonal contact was incidental to the work performed, with no contact with the general public. The ALJ asked the VE if such an individual would be able to perform past relevant work as a prep cook and cleaner, to which the VE answered affirmatively. The ALJ then asked the VE if the same individual would still be able to perform such work if he added the limitation that the individual could only perform low stress work, to which the VE answered affirmatively. The ALJ then asked the VE if the same individual would be able to perform such work if he could lift and carry 50 pounds occasionally, 25 pounds frequently, could sit for up to six hours in an eight hour work-day and could stand and walk for about six hours in an eight hour work-day, to which the VE answered affirmatively.

After thoroughly reviewing the hearing transcript, along with the entire evidence of record, the Court finds that the hypotheticals the ALJ proposed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff would be able to perform his past relevant work as a prep cook, medium exertional level, unskilled.

V.    **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and affirms the ALJ's decision. Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this 30th day of August, 2011

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)